**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCELEVATE 2020, LLC and : | |
| JOE RICHARD POOL, : | No. 1:20-cv-00128 |
|     Plaintiffs : | |
| : | (Judge Kane) |
|     v. : | |
| : | |
| KATHRYN BOOCKVAR and : | |
| JONATHAN MARKS, : | |
|     Defendants : | |

**ORDER**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

Plaintiffs Accelevate 2020, LLC and Joe Richard Pool ("Plaintiffs") initiated the above-captioned action on January 24, 2020 by filing a complaint against Defendants Kathryn Boockvar and Jonathan Marks ("Defendants") in this Court (Doc. No. 1), along with an emergency motion for a temporary restraining Order requesting that this Court enjoin Defendants from enforcing certain provisions of the Commonwealth of Pennsylvania's Election Code (the "Election Code") as to Plaintiffs in the context of Pennsylvania's 2020 Democratic primary election for President of the United States (Doc. No. 3). In sum, Plaintiff Joe Richard Pool ("Plaintiff Pool") seeks an order enjoining Defendants from enforcing the Commonwealth's state residency requirement for circulators of nomination petitions, codified at 25 P.S. § 2869 (the "In-State Witness Requirement"), with regard to his circulation of nominating petitions for candidates in the Democratic primary in Pennsylvania (id.), in light of this Court's opinion issued in Benezet Consulting v. Boockvar, No. 16-cv-00074, 2020 WL 137036 (M.D. Pa. Jan. 13, 2020). Plaintiffs effected service of the complaint and motion on January 27, 2020 (Doc. Nos. 6, 7, 8), and the Court conducted telephonic status conferences with the parties on January 30, 2020, and on this date.

In Benezet, the Court held, in pertinent part, that the In-State Witness Requirement violated the First Amendment as it applied to the plaintiffs, a registered Republican circulator from Texas and the organization through which he engages in circulation-related activity. See Benezet, 2020 WL 137036, at *13 ("Accordingly, the Court deems the Pennsylvania Election Code's In-State Witness Requirement unconstitutional as applied to Benezet and Pool, and Defendants will be enjoined from enforcing this requirement as to Benezet and Pool in the context of the 2020 Republican primary election for President of the United States."). In arriving at this conclusion, the Court reasoned that in light of the individual plaintiff's status as a registered member of the Republican Party, circulation of petitions by that plaintiff for Republican candidates did not implicate "party raiding" so as to warrant a less stringent standard of review, and that under strict scrutiny, the defendants failed to demonstrate that the In-State Witness Requirement was narrowly tailored so as to advance the interest of preventing voter fraud. See id. at 12-13 and n.19 ("The Court finds that 'party raiding' is inapplicable to the case at bar only insofar as Pool is circulating on behalf of Republican candidates. As it pertains to any circulation by Pool on behalf of candidates from other parties, however, the Court finds that De La Fuente governs the instant case because, as noted supra, the Court of Appeals indicated therein that one does not have a constitutional right to associate with a party to which he does not belong." (citing De La Fuente v. Cortes, 751 F. App'x 269, 274 (3d Cir. 2018))). The Court, therefore, enjoined Defendants from enforcing the In-State Witness Requirement as to the plaintiffs in the context of the 2020 Republican primary election for President of the United States. See id.

In the case at bar, Plaintiff Pool, a California resident and professional petition circulator, "is a principal member of [Plaintiff] Accelevate 2020, LLC, and intends to supervise the

professional out-of-state Democratic circulators contracted by Accelevate 2020, LLC to circulate nomination petitions for Tulsi Gabbard in the Commonwealth of Pennsylvania." (Doc. No. 1 ¶ 20.) The complaint sets forth the following claims: a facial challenge to the In-State Witness Requirement under the First Amendment (Count I); an as-applied challenge to the In-State Witness Requirement under the First Amendment (Count II); and a challenge to the In-State Witness Requirement under the Equal Protection Clause of the Fourteenth Amendment (Count III).  (Id. at 15-20.)[1]  As to their emergency motion for a temporary restraining order, Plaintiffs maintain that:

> Plaintiffs require the emergency injunctive relief requested because Plaintiffs are not residents of the Commonwealth of Pennsylvania, and employ professional out-of-state circulators who are affiliated with the Democratic Party who intend to circulate nomination petitions.  Plaintiffs have been contracted by Tulsi Gabbard, a candidate for the 2020 presidential nomination of the Democratic Party. Plaintiffs intend to begin circulating nomination petitions for Tulsi Gabbard in Pennsylvania on January 31, [2020] to place her name on the 2020 Pennsylvania Democrat Presidential Primary ballot.  [Plaintiffs'] ability to efficiently and effectively circulate Tulsi Gabbard's nomination petitions will be severely impaired in the absence of the requested emergency injunctive relief.

(Doc. No. 5 at 8.)  Plaintiffs assert primarily that: (1) there is no reason why the Court's holding in Benezet "should not be extended to the circulation of all nomination petitions in the Commonwealth"; (2) this Court should "immediately enjoin[] Defendants' enforcement of the [I]n-[S]tate [W]itness [R]equirement . . . for out-of-state circulators affiliated with the

---

[1] As to Count III, Plaintiffs allege that subsequent to the issuance of this Court's decision in Benezet, while "Republican candidates can avoid the [In-State Witness Requirement] . . . by employing Benezet Consulting, LLC and/or Trenton Pool . . . Democrat candidates have no avenue to avoid" this requirement.  (Doc. No. 1 ¶¶ 68-69.)  According to Plaintiffs, "Defendants' different treatment of, and imposition of different requirements upon, Plaintiffs in the circulation of nomination petitions for Democratic candidates, as opposed to the circulation of nomination petitions of Republican candidates by Benezet Consulting, LLC and/or Trenton Pool . . . constitutes a violation of Plaintiffs' rights under the Equal Protection Clause."  (Id. ¶ 71.)

Democratic Party circulating nomination petitions for Democratic candidates"; and (3) the requested injunctive relief is warranted because Plaintiffs have made the requisite showing that the various factors influencing the propriety of injunctive relief weigh in favor of granting their motion. (Id. at 9-10.)

"If there is a possibility that irreparable injury will occur before the hearing on a preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be available under Rule 65(b)." Trefelner v. Burell Sch. Dist., 655 F. Supp. 2d 581, 588-89 (W.D. Pa. 2009) (citing Fed. R. Civ. P. 65(b)). "Injunctive relief in any form is 'an extraordinary remedy that should be granted in limited circumstances.'" Id. at 589 (quoting Messner v. Bunner, No. 07-cv-2009 WL 1406986, at *2 (W.D. Pa. May 19, 2009)). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quoting Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990)). A party seeking injunctive relief must show the following: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." See id. (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)). These factors apply equally with respect to motions for preliminary injunctions and motions for temporary restraining orders. See Lozano v. City of Hazleton, 459 F. Supp. 2d 332, 335 (M.D. Pa. 2006) (citing Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994)). Turning to the instant motion (Doc. No. 3), the Court addresses the applicability of these factors below.

A. LIKELIHOOD OF SUCCESS ON THE MERITS

The Court finds that Plaintiffs have demonstrated a likelihood of success on the merits for purposes of establishing entitlement to the requested injunctive relief. "To establish a likelihood of success on the merits, a movant must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." Pa. Professional Liability Joint Underwriting Ass'n v. Wolf, 328 F. Supp. 3d 400, 407 (M.D. Pa. 2018) (citing Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980)). In determining whether such a showing has been made, a court "must examine the legal principles controlling the claim and the potential defenses available to the opposing party." See id. (citing BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 264 (3d Cir. 2000)). As Plaintiffs aptly note in support of their motion, the instant case presents the same First Amendment issue at play in Benezet, but for the fact that Plaintiff Pool in this case is a registered Democrat seeking to circulate for a candidate in the Democratic primary election. (Doc. No. 5 at 11.) The Court's analysis in Benezet, therefore, would appear to apply squarely to the instant case. See Benezet, 2020 WL 137036 at *12 (analyzing the In-State Witness Requirement as applied to the plaintiffs under strict scrutiny). Having discerned from the record no reason as to why Benezet would not apply to the instant case, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits. Consequently, this factor weighs in favor of granting Plaintiffs' motion.

B. IRREPARABLE HARM

The Court also finds that this factor weighs in favor of granting Plaintiffs' request for injunctive relief. "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The [injunctive relief] must be the only way of protecting the plaintiff from harm." Instant Air

Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) (citing Weinberger v. Romer-Barcelo, 456 U.S. 305, 312 (1982); Cont'l Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 and n.9 (3d Cir. 1980)).  When the purported injury concerns harm to a plaintiff's First Amendment rights, the harm is typically considered irreparable.  See Reilly v. City of Harrisburg, 336 F. Supp. 3d 451, 471-72 (M.D. Pa. 2018) (discussing authority supporting the proposition that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary" (citing 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995))).  Under this standard, Plaintiffs have made the requisite showing of irreparable harm because their complaint and supporting brief demonstrate that, should this Court deny their request for relief, they would certainly face a First Amendment violation by having to comply with the In-State Witness Requirement in the context of their signature-gathering efforts for the upcoming 2020 Democrat primary.  Having found that Plaintiffs have demonstrated irreparable harm, the Court finds that this factor also weighs in favor of granting Plaintiffs' motion.

    C.    HARM TO THE NONMOVING PARTY

Turning to this third factor, the Court finds that there would not be sufficient harm to the nonmoving parties in this case – Defendants – so as to warrant denial of Plaintiffs' motion.  In this regard, "[t]he question is whether, and to what 'extent[,] . . . the defendants will suffer irreparable harm if the preliminary injunction is issued.'"  See Kos Pharm., 369 F.3d at 727 (second alteration in original) (quoting Opticians, 920 F.2d at 192).  If granting the requested relief would result in such harm, the Court must then "'balance the hardships' to ensure that the injunction does not harm the nonmoving party more than denial of the injunction would harm the movant."  See MNI Mgmt., Inc. v. Wine King, LLC, 542 F. Supp. 2d 389, 403 (D.N.J. 2008)

(quoting Kos Pharm., 369 F.3d at 727). In the case at bar, the Court finds no showing of sufficient harm to the nonmoving party so as to call into question the propriety of a temporary restraining order. See OpenPittsburgh.Org. v. Wolosik, 2:16-cv-01075, 2016 WL 7985286, at *3 (W.D. Pa. Aug. 9, 2016) (granting in part and denying in part a motion for a preliminary injunction pertaining to certain portions of Pennsylvania's Election Code and commenting that, with respect to certain requirements governing the residency of petition circulators, "any harm to a nonmoving party does not outweigh the harm to [the] [p]laintiff"). Moreover, as the Court discussed more extensively in Benezet, "in order to further its interest of preventing election fraud, the Commonwealth is not prohibited from requiring [the plaintiffs] to submit to the jurisdiction of the Commonwealth with respect to their activities that are implicated by the In-State Witness Requirement." See Benezet, 2020 WL 137036, at *12. The Court finds, therefore, that compliance with an order granting Plaintiffs' motion in the instant case would not result in harm to Defendants that would be of the level so as to caution against injunctive relief. Accordingly, the Court concludes that this factor also weighs in favor of granting Plaintiffs' motion.

    D.    PUBLIC INTEREST

Having considered the applicability of this fourth and final factor, the Court finds that this factor, too, weighs in favor of entering the requested restraining order. Surely, as Plaintiffs note, "[t]he health and well-being of a democracy depends upon choice at the ballot box." (Doc. No. 5 at 27.) Based on the record currently before it, the Court finds no reason to conclude that ordering injunctive relief in this instance would hinder the public interest. Rather, the Court finds that denial of the requested relief would be adverse to the public interest because "the public interest is clearly served by protecting [the] plaintiffs' First Amendment rights." See

McMahon v. Pa. Turnpike Comm'n, 491 F. Supp. 2d (M.D. Pa. 2007) (citing Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997)).  Accordingly, the Court finds that consideration of this factor also compels the conclusion that Plaintiffs' motion should be granted.

**AND SO**, on this 31st day of January 2020, in consideration of the foregoing, **IT IS ORDERED THAT** Plaintiffs' motion for a temporary restraining order (Doc. No. 3) is **GRANTED**.  **IT IS FURTHER ORDERED THAT** Defendants are enjoined from enforcing the state residency requirement for witnesses of nomination petitions, set forth in 25 P.S. § 2869, as to Plaintiffs Accelevate 2020, LLC and Joe Richard Pool, for purposes of the 2020 Pennsylvania Democratic primary election for President of the United States, upon receipt of Plaintiffs' posting of a surety in the amount of $500.00, on or before 5:00 PM on Monday, February 3, 2020, pursuant to Federal Rule of Civil Procedure 65(c) "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[2]

        s/ Yvette Kane
        Yvette Kane, District Judge
        United States District Court
        Middle District of Pennsylvania

---

[2] See Fed. R. Civ. P. 65(c).  The Court finds that an amount of $500.00 is appropriate in the instant case because such an amount "will further the [] policies underlying Rule 65(c) without imposing an undue hardship on Plaintiffs, and without unduly restricting the enforcement of 'important federal rights or public interests.'"  See Pa. Family Inst., Inc. v. Celluci, 489 F. Supp. 2d 447, 459 (E.D. Pa. 2007) (second set of internal quotation marks omitted) (quoting Temple Univ. v. White, 941 F.2d 201, 220 (3d Cir. 1991)), injunction lifted, 521 F. Supp. 2d 351 (E.D. Pa. 2007).